UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------x

KEVIN MCKEOWN,

                                        Plaintiff,          **08 CIV. 2391 (SAS)**

           -against-

THE STATE OF NEW YORK; THE OFFICE OF COURT       **NOTICE OF MOTION**
ADMINISTRATION OF THE UNIFIED COURT SYSTEM;      **TO DISMISS**
THE N.Y. STATE COMMISSION ON JUDICIAL CONDUCT;
THE N.Y.S. 1ST DEPT., DEPARTMENTAL DISCIPLINARY
COMMITTEE; THOMAS J. CAHILL, in his official and individual
capacity; SHERRY K. COHEN, in her official and individual capacity;
GARY L. CASELLA, in his official and individual capacity;
NANCY J. BARRY, in her official and individual capacity;
FRANCIS A. NICOLAI, in his official and individual capacity;
JOSEPH M. ACCETTA, in his official and individual capacity;
ROBERT M. DIBELLA, in his official and individual capacity;
ANTHONY A. SCARPINO, in his official and individual capacity;
ROBERT A. KORREN; JEFFREY A. MCNAMARA;
PATRICIA BAVE-PANELL; GIULINI & GIULINI, ESQS.;
CHARLES A. GIULINI, individually and as a partner of Giulini
and Giulini; CHRISTINE GIULINI, individually and as a partner
of Giulini and Giulini; CATHERINE M. MIKLITSCH;
MCQUADE & MCQUADE, ESQS, JOSEPH F. MCQUADE,
individually and as a partner of MCQUADE & MCQUADE;
MICHAEL D. McQUADE, individually and as partner of
McQuade & McQuade and JOHN and JANE DOES, 1-20,

                                        Defendants.
-------------------------------------------------------------------------x

        S I R S :

        PLEASE TAKE NOTICE, that upon the annexed Affirmation of JOSEPH McQUADE,

sworn to on June 5, 2008, and accompanying Memorandum of Law, the Summons dated

March 7th 2008, the Amended Complaint dated May 12, 2008, filed with the Court on May 14,

2008, the Exhibits annexed and upon all the papers and proceedings previously had herein, the

undersigned will move this, Court, before the **Hon. Shira A. Scheindlin,** United States District

Judge, at 500 Pearl Street, New York 10007, at a date and time to be determined by the Court for

an order pursuant to Rule 12 (b) of the Federal Rules of Civil Procedure dismissing Plaintiff's

Amended Complaint, dated May 12, 2008 in its entirety upon the grounds that the Plaintiff is

precluded by the Statute of Limitations of the State of New York and that Plaintiff's Counts

against Michael McQuade and Joseph McQuade have no basis in law or in fact and that by reason

of Plaintiff's wrongful and illegal conduct Plaintiff is barred from any relief, and for such other and

further relief as to this court deems just and proper.

> **I declare under penalty of perjury that the forgoing is true and correct.**

> PLEASE TAKE FURTHER NOTICE that pursuant to Rule 12 you are required to serve

all answering papers at least seven (7) days (twelve (12) days if served by mail) before the return

date of this motion.

Dated: New York, New York
      June 5th, 2008

                               MCQUADE & MCQUADE

                               by *Michael McQuade*
                               Michael McQuade
                               Attorneys for Defendants, Michael D.
                               McQuade, Joseph McQuade, &
                               McQuade & McQuade
                               104 East 40th Street- Suite 307
                               New York, New York 10016
                               212-599-3644

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

KEVIN MCKEOWN,

                              Plaintiff,

        -against-

THE STATE OF NEW YORK; THE OFFICE OF COURT
ADMINISTRATION OF THE UNIFIED COURT SYSTEM;
THE N.Y. STATE COMMISSION ON JUDICIAL CONDUCT;
THE N.Y.S. 1ST DEPT., DEPARTMENTAL DISCIPLINARY
COMMITTEE; THOMAS J. CAHILL, in his official and individual
capacity; SHERRY K. COHEN, in her official and individual capacity;
GARY L. CASELLA, in his official and individual capacity;
NANCY J. BARRY, in her official and individual capacity;
FRANCIS A. NICOLAI, in his official and individual capacity;
JOSEPH M. ACCETTA, in his official and individual capacity;
ROBERT M. DIBELLA, in his official and individual capacity;
ANTHONY A. SCARPINO, in his official and individual capacity;
ROBERT A. KORREN; JEFFREY A. MCNAMARA;
PATRICIA BAVE-PANELL; GIULINI & GIULINI, ESQS.;
CHARLES A. GIULINI, individually and as a partner of Giulini
and Giulini; CHRISTINE GIULINI, individually and as a partner
of Giulini and Giulini; CATHERINE M. MIKLITSCH;
MCQUADE & MCQUADE, ESQS, JOSEPH F. MCQUADE,
individually and as a partner of MCQUADE & MCQUADE;
MICHAEL D. McQUADE, individually and as partner of
McQuade & McQuade and JOHN and JANE DOES, 1-20,

                              Defendants.

------------------------------------------------------------------------x

**08 CIV. 2391 (SAS)**

**AFFIRMATION
IN SUPPORT OF
MOTION TO DISMISS**

STATE OF NEW YORK and COUNTY OF NEW YORK) ss.:

      JOSEPH F. McQUADE, an attorney duly admitted to practice before the county of the

State of New York and before the U.S. District Court, Southern District, under penalties of

perjury, affirms as follows:

     1.     I am a member of the firm of McQUADE & McQUADE and am one of the named

Defendants in the above entitled action.

computer records subsequent to her death in order to cover up his defalcation of assets/funds from his own mother; that he allegedly assaulted his own sister, Mary; that prior to his mother's death, he violated the express provision of a Power of Attorney which required him to act jointly with myself and instead individually used the Power of Attorney for his own gain.

### COUNT SEVEN FOR BREACH OF FIDUCIARY DUTY MUST BE DISMISSED

8.     Plaintiff charges the defendants Joseph McQuade and Michael McQuade with breach of fiduciary duty and seeks monetary damages.

9.     Plaintiff in support of his Count SEVEN alleges acts which occurred in 2003. He admits in 2004 Plaintiff had sought and retained separate counsel to represent him in his mother's estate. Plaintiff, in fact, to my knowledge, retained at least four different attorneys to represent him in his mother's estate and finally represented himself.

10.     A cause of action for breach of fiduciary duty seeking money damages must be brought within 3 years of the acts claimed.

11.     The Statute of Limitations Rule 203 of CPLR in New York State bars his claim as a matter of law. (See annexed Memorandum of Law).

12.     I submit that Plaintiff's Count SEVEN must be dismissed in its entirety and with prejudice since it is barred by the Statute of Limitations.

### COUNT SIX MUST ALSO BE DISMISSED

13.     Defendants never entered into a Contract with Plaintiff McKeown to protect his legal interests. Defendants entered into a retainer agreement with the Estate of Margaret A.

3

McKeown in order to serve and protect the estate's interests.

14.    The law firm of McQuade & McQuade per Joseph McQuade fulfilled its obligation to the Estate by representing the Estate and protecting its interests until such time as the Court directed the Public Administrator to be substituted as the estate fiduciary.

15.    When Preliminary Executrix Mary Virga informed Joseph McQuade of Plaintiff's McKeown's misconduct, including closing of bank accounts, Plaintiff McKeown's seizing of decedent's property, computer and financial records and requested that the Surrogate Westchester County be notified, Joseph McQuade as an officer of the Court and in the interests of the Estate of Margaret A. McKeown prepared legal papers signed by Mary Virga as Preliminary Executrix in order to inform the Surrogate and seek Plaintiff Kevin McKeown's removal. The Surrogate subsequently entered an Order removing Mr. McKeown as fiduciary.

## THERE WAS NO BREACH OF CONTRACT ON PART OF DEFENDANT McQUADE

16.    Not only did Defendants enter into the retainer agreement with the Estate of Margaret A. McKeown, but the very purpose of the contract was to render legal services for the Margaret A. McKeown Estate and to properly assist in the estate administration and to protect the estate and the estate's assets.

17.    A breach of contract to be material must somehow defeat the very purpose of the contract.

18.    Plaintiff's allegations in his Amended Complaint (which are false) demonstrate that his entire claim is based on the actions of Joseph F. McQuade in assisting Mary McKeown Virga, decedent's daughter, in bringing to the Surrogate's attention Plaintiff McKeown's wrongful

4

conduct including seizure and destruction of documents and financial records, misappropriation of decedent's assets and closing bank accounts.

19.    Plaintiff McKeown bases his claim for contract breach solely on the actions taken by Mary Virga and defendant Joseph McQuade in reporting to the Surrogate the facts of Plaintiff McKeown's wrongdoings and misconduct which included seizure and destruction of his mother's financial records.

20.    Thus McKeown's untenable position is: Had Mary Virga and attorney Joseph McQuade not divulged his misconduct and wrongdoing to the Surrogate there would be no contract breach.

21.    Plaintiff's claim is baseless since the very purpose of the retainer agreement was to render services for and in the interests of the Estate of Margaret A. McKeown.

22.    My obligation as attorney and officer of the Court was to report to the Surrogate and assist the preliminary Executrix, Mary Virga, in disclosing the damage and injury to the estate and its orderly administration.

23.    Plaintiff McKeown's claim is totally founded on the proposition that he by signing the retainer, he Plaintiff, had a right to be protected and assisted even to the point of Defendant Joseph McQuade covering up and refusing to disclose his misdeeds and misconduct even at the expense of his mother's estate and the estate's other beneficiaries.

24.    Note also Defendant Michael McQuade was never involved in the McKeown Estate and never rendered services to the estate.

25.    By reason of the foregoing, there was and is no breach of contract.

26.    Plaintiff's Count SIX in the Amended Complaint as a matter of law should be

5

dismissed against Defendants McQuade and against McQuade & McQuade. (See accompanying Memorandum of Law).

27.    The defendants have made no prior application for the relief herein requested to this or any other Court.

WHEREFORE, Defendants request that a Judgment/Order be entered dismissing Counts SIX and SEVEN in their entirety and for such other relief as to the Court seems just and proper.

Defendants also request sanctions against Plaintiff Kevin McKeown in the amount of $45,000.00. Pursuant to 28USC§1746 I declare under penalty of perjury the foregoing is true and correct.

Dated: June 5, 2008
    New York, N.Y.

                                        _____
                                          JOSEPH MCQUADE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

. . . .                                              ⋅⋅⋅⋅          X

KEVIN MCKEOWN,

                                        Plaintiff,              **08 Civ 2391 (SAS)**

            -against-

THE STATE OF NEW YORK; THE OFFICE OF COURT
ADMINISTRATION OF THE UNIFIED COURT SYSTEM;
THE N.Y. STATE COMMISSION ON JUDICIAL CONDUCT;
THE N.Y.S. 1ST DEPT., DEPARTMENTAL DISCIPLINARY COMMITTEE;
THE N.Y.S. GRIEVANCE COMMITTEE, 9TH JUDICIAL DISTRICT;
THOMAS J. CAHILL, in his official and individual capacity;              **1st AMENDED**
SHERRY K. COHEN, in her official and individual capacity;               **COMPLAINT**
GARY L. CASELLA, in his official and individual capacity;
NANCY J. BARRY, in her official and individual capacity;
FRANCIS A. NICOLAI, in his official and individual capacity;
JOSEPH M. ACCETTA, in his official and individual capacity,
ROBERT M. DIBELLA, in his official and individual capacity;
ANTHONY A. SCARPINO, in his official and individual capacity;
ROBERT A. KORREN; JEFFREY A. MCNAMARA;
PATRICIA BAVE-PLANELL; GIULINI & GIULINI, ESQS.;
CHARLES A. GIULINI, individually and as a partner of
  Giulini and Giulini; CHRISTINE GIULINI, individually and
  as a parter of Giulini and Giulini; CATHERINE M. MIKLITSCH
MCQUADE & MCQUADE, ESQS.; JOSEPH F. MCQUADE,
individually and as a partner of McQuade & McQuade;
MICHAEL D. MCQUADE, individually and as a partner of
McQuade & McQuade; and JOHN and JANE DOES, 1-20,
                                        Defendants.              *JURY TRIAL DEMANDED*

------------------------------------------------------------------X

     **PLAINTIFF** Kevin McKeown, *Pro Se*, as and for his Complaint against the above-

captioned defendants, alleges upon knowledge as to his own facts and upon information and

belief as to all other matters:

## PRELIMINARY STATEMENT

     1.     This is a civil action seeking injunctive relief, monetary relief, compensatory and

punitive damages, disbursements, costs and fees for violations of rights, brought pursuant to 42

U.S.C. § 1983; the First and Fourteenth Amendments to the United States Constitution; and State

law claims.

1

2.    Specifically, plaintiff alleges that all of the above-captioned defendants wantonly, recklessly, knowingly and purposefully, acting individually and in conspiracy with each other, sought to deprive plaintiff of his Constitutional rights, by means of misrepresentation, fraud, harassment, manipulation of laws, rules, and regulations and for various other reasons. Plaintiff is aware of at least ten other cases against the New York State Office of Court Administration of the Unified Court System concerning, *inter alia*, "white-washing" of complaints against certain select attorneys and other state employees for "political reasons."

3.    At all times relevant, the defendants have acted to deny plaintiff of constitutionally guaranteed rights of due process of law, equal protection, and the right to petition his government.

4.    At all times relevant, the defendants, individually and in concert with each other, acted to 'white wash' and otherwise conceal various improper actions devised to prevent the rightful return of over $100,000.00 stolen from American Red Cross 9/11 donations, and as reported in the **New York Times** on April 28, 2006, *"Red Cross Quietly Settles Case of a $120,000 Theft,"* and that additionally resulted in the subsequent fraud against the insurance company that partially paid out on the Red Cross 9/11 donation theft claim. **(Exhibit "A")**

5.    The defendants denied plaintiff is rights of due process, equal protection, right to petition the government, inter alia, because plaintiff would not go along with the defendants' improper scheme to defraud numerous creditors.

6.    At all times relevant, the defendants, individually and in concert with each other, acted to harass, intimidate and harm plaintiff for not keeping silent in their individual and collective desire to defraud the Red Cross, an insurance company, and The State of Texas out of an amount now exceeding $1,600,000.00.

7.    Plaintiff also specifically brings claims against attorneys Michael and Joseph F. McQuade (in their individual capacity and in their capacity as partners of McQuade & McQuade,

Esqs., (hereinafter "McQuade & McQuade") for alleged fraud, harassment, breach of contract (See attached Retainer Agreement) and breach of fiduciary duties. **(Exhibit "B")**

## JURISDICTION AND VENUE

8.    Jurisdiction of this Court is invoked under 28 U.S.C. §1331, 28 U.S.C. §§1343(3) and (4), and the First and Fourteenth Amendments to the United States Constitution. Pendent jurisdiction over Plaintiff's state law claims is proper pursuant to 28 U.S.C. §1367.

9.    This Court has jurisdiction pursuant to 42 U.S.C. §1983, because defendant the State of New York is a "state actor" within the meaning of §1983; and the Offices of Court Administration of the Unified Court System, the New York State Commission on Judicial Conduct, the New York State Supreme Court Appellate Division, First Department, Departmental Disciplinary Committee, and the New York State Grievance Committee, Ninth Judicial District is each an arm of the State of New York and are "state actors" within the meaning of § 1983.

10.    Venue herein is proper under 28 U.S.C. § 1391(b); the cause of action arose in the Southern District of New York, all of the parties reside in, or worked at all times relevant, in the State of New York, except for defendant McNamara who is a Connecticut based attorney, and because the events or omissions giving rise to plaintiff's claims occurred in this judicial district.

## THE PARTIES

11.    At all times relevant in this Complaint, plaintiff is an individual residing in the State of New York. At all times relevant hereto, plaintiff was a complainant and witness to the various grievance complaints and other acts by defendants against plaintiff and as contained herein.

12.    At all times relevant to this Complaint, defendant STATE OF NEW YORK (hereinafter "State") is a sovereign state of the United States of America. At all times relevant herein, defendant State was an employer within the meaning of the Constitution of the State of New

3

York and was a governmental entity acting under color of the laws, statutes, ordinances, regulations, policies, customs and usages of the State of New York.

13.    At all times relevant to this Complaint, defendant OFFICE OF COURT ADMINISTRATION OF THE UNIFIED COURT SYSTEM (hereinafter "OCA"), THE NEW YORK STATE COMMISSION ON JUDICIAL CONDUCT (hereinafter "SCJC"), THE NYS FIRST DEPT., DEPARTMENTAL DISCIPLINARY COMMITTEE (hereinafter "DDC") and THE NYS GRIEVANCE COMMITTEE, NINTH JUDICIAL DISTRICT (hereinafter "9JDGC") (or, collectively, hereinafter "OCA") are and were at all relevant times governmental entities created by and authorized under the laws of the State of New York. At all times relevant herein, defendant OCA was a governmental entity acting under color of the laws, statutes, ordinances, regulations, policies, customs and usages of the State of New York.

14.    At all times relevant to this Complaint, defendant Thomas J. Cahill (hereinafter "Cahill"), sued here in his official and individual capacity, is an attorney, who, upon information and belief, resides in the State of Connecticut. At all times relevant herein, defendant Cahill was employed as Chief Counsel for the DDC; was a policy maker for administrative and employment-related matters at the DDC; and was an employer within the meaning of the Constitution of the State of New York.

15.    At all times relevant to this Complaint defendant Sherry Cohen (hereinafter "Cohen"), sued in her official and individual capacity, was upon information and belief, a citizen of the United States, residing in the State of New York. At all times relevant herein, defendant Cohen was employed by OCA as a DDC supervising attorney.

16.    At all times relevant to this Complaint, defendant Gary L. Casella (hereinafter "Casella"), sued here in his official and individual capacity, is an attorney for the 9JDGC.

4

17.    At all times relevant to this Complaint, defendant Nancy J. Barry (hereinafter "Barry"), sued here in her official and individual capacity, is an attorney, who, upon information and belief, resides in the State of New York. At all times relevant herein, Defendant Barry was employed by OCA as principal attorney.

18.    At all times relevant to this Complaint, defendant Francis A. Nicolai (hereinafter "Nicolai"), sued here in his official and individual capacity, is an attorney and judicial administrator of the Ninth Judicial District of the State of New York who, upon information and belief, resides in the State of New York, and at all times relevant an employee of OCA.

19.    At all times relevant to this Complaint, defendant Joseph M. Accetta (hereinafter "Accetta"), sued here in his official and individual capacity, is an attorney, who, upon information and belief, resides in the State of New York. At all times relevant herein, defendant Accetta was employed by OCA as a New York State court attorney.

20.    At all times relevant to this Complaint, defendant Robert M. DiBella (hereinafter "DiBella"), sued here in his official and individual capacity, is an attorney, who, upon information and belief, resides in the State of New York. At all times relevant herein, defendant Accetta was employed by OCA as a New York State court attorney.

21.    At all times relevant to this Complaint, defendant Anthony A. Scarpino (hereinafter "Scarpino"), sued here in his official and individual capacity, is an attorney and surrogate, who, upon information and belief, resides in the State of New York, and at all times relevant an employee of OCA.

22.    At all times relevant to this Complaint, defendants Robert A. Korren (hereinafter "Korren"), Patricia Bave Planell (hereinafter "Bave Planell") and Catherine M. Miklitsch (hereinafter "Miklitsch") are New York admitted attorneys who, upon information and belief, reside in the State of New York.

23.     At all times relevant to this Complaint, defendant Jeffrey A. McNamara is a

Connecticut admitted attorney, and part-time CT probate judge who, upon information and

belief, resides in the State of Connecticut.

24.     At all times relevant to this Complaint, defendant Giulini & Giulini, Esqs.

(hereinafter "Giulini & Giulini") is a domestic professional service limited liability company,

providing legal services to the public, located at 274 Madison Avenue, New York, New York.

25.     At all times relevant to this Complaint, defendant Charles A. Giulini (hereinafter

"CAGiulini"), sued here in his individual capacity and as partner of defendant law firm Giulini &

Giulini, is an attorney, who, upon information and belief, resides in the State of New York. At all

times relevant herein, defendant CAGiulini has been a partner in the defendant law firm Giulini &

Giulini located at 274 Madison Avenue, New York, New York.

26.     At all times relevant to this Complaint, defendant Christine Giulini (hereinafter

"CGiulini"), sued here in her individual capacity and as partner of defendant law firm Giulini &

Giulini, is an attorney, who, upon information and belief, resides in the State of New York. At all

times relevant herein, defendant CGiulini has been a partner in the defendant law firm Giulini &

Giulini located at 274 Madison Avenue, New York, New York.

27.     At all times relevant to this Complaint, defendant McQuade & McQuade, Esqs.

(hereinafter "McQuade & McQuade") is a domestic professional service limited liability company,

providing legal services to the public, located at 104 East 40th Street, New York, New York 10016.

28.     At all times relevant to this Complaint, defendant Joseph F. McQuade (hereinafter

"JMcQuade"), sued here in his individual capacity and as partner of defendant law firm McQuade

& McQuade, is an attorney, who, upon information and belief, resides in the State of New York. At

all times relevant herein, defendant JMcQuade has been a partner in the defendant law firm

McQuade & McQuade located at 104 East 40th Street in New York, New York.

6

29.    At all times relevant to this Complaint, defendant Michael D. McQuade (hereinafter "MMcQuade"), sued here in his individual capacity and as partner of defendant law firm McQuade & McQuade, is an attorney, who, upon information and belief, resides in the State of New York. At all times relevant herein, defendant MMcQuade has been a partner in the defendant law firm McQuade & McQuade located at 104 East 40th Street in New York, New York.

## FACTUAL BACKGROUND

30.    Upon information and belief, on or about September 2, 2003, plaintiff and Mary Virga (hereinafter "Virga") formally engaged, by virtue of a fully executed retainer agreement **(Exhibit "B")**, the legal services of defendant McQuade and defendant law firm McQuade & McQuade, to jointly represent them in the estate of their mother. Plaintiff and Virga had both been named as co-fiduciaries in the decedent's, Margaret McKeown (hereinafter "Margaret"), last will and testament, and within days of being formally retained, McQuade filed a joint petition for probate in court on behalf of both co-clients.

31.    At the time of her death in New York on August 26, 2003, Margaret had four living children who were beneficiaries under the will: Ronald P. McKeown, Jr. ("Ronald"), a resident of Connecticut; Thomas J. McKeown, Sr. ("Thomas"), a resident of Connecticut; Kevin McKeown ("Kevin" or "plaintiff"), residing in New York; and Mary Megan McKeown Virga ("Virga"), a resident of Florida.

32.    Upon information and belief, during September and October of 2003, plaintiff fully advised McQuade that he (the plaintiff) and the decedent had, until her death, been actively engaged in resolving certain legal issues concerning Ronald. McQuade was fully informed that Ronald: (a) was out on bail after being arrested in Connecticut on charges of stealing over $100,000.00 in 9/11 Red Cross donation monies; (b) was mentally incompetent and at the time had been under court-

7

ordered psychiatric in and outpatient care for nearly 18 months; (c) had an outstanding judgment against him by the State of Texas for then-over $190,000.00 for collected but unpaid sales taxes due the State of Texas, and a Texas State judgment for conversion;  (d) had a $250,000.00 federal tax lien against him; (e) had claims against him by the American Red Cross in excess of  $120,000.00; (f) that the State of Connecticut had a claim against Ronald pertaining to the pending criminal charges; and (g) that Ronald had attempted suicide numerous times since his arrest for stealing the Red Cross 9/11 donation monies.

33.    Upon information and belief, in or about September and October of 2003, McQuade was made fully aware that plaintiff wanted to expeditiously fulfill their mother's intention to repay the Red Cross monies even though it was not so directed pursuant to her last will and testament. McQuade was informed by plaintiff that the repayment of the Red Cross monies would be equally borne by the four surviving children. There came a time, however, and upon information and belief, when McQuade, Virga, and others who would financially gain, decided to devise certain improper legal implements so that no estate monies would be used to pay back the donation monies stolen from the Red Cross, the IRS or monies due the State of Texas.

34.    Upon information and belief, on September 24, 2003, and unbeknownst to plaintiff at the time, Virga executed, and McQuade notarized Virga's signature on an *ex parte* Verified Petition to revoke plaintiff's Preliminary Letters Testamentary- legal documents that McQuade had previously drafted to the detriment of plaintiff on behalf of one co-client in the very same proceeding.  (**Exhibit "B"**)

35.    Upon information and belief, on or about September 26, 2003, defendant McQuade presented a check to his co-clients, plaintiff and Virga, to be jointly signed, in the amount of $18,370.92, and made payable to defendant McQuade & McQuade. The check cleared the bank, upon information and belief, on or about September 26, 2003. (**Exhibit "B"**)

8

36.     Upon information and belief, on or about October 8, 2003, McQuade appeared in court with, and on behalf of, plaintiff and Virga, announcing on the record in open court, "Mary McKeown and Kevin McKeown both presently preliminary executors—co-executors." **(Exhibit "B")**

37.     Upon information and belief, on or about October 8, 2003, and shortly after the court hearing, and during a conference with defendant Accetta, plaintiff first learned that his own retained attorney, McQuade, had filed in court his previously prepared, executed, notarized and submitted an *ex parte* order to show cause against plaintiff. At all times relevant, and upon information and belief, McQuade advanced court proceedings in the same matter on behalf of one co-client against another co-client, to wit, co-client Virga against co-client plaintiff, seeking a stay of his own co-client's authority to continue acting as an estate co-fiduciary.

38.     Upon information and belief, defendant Accetta: (a) accepted McQuade's *ex parte* filing by Virga against plaintiff, knowing that McQuade was at that time simultaneously representing both parties in that proceeding, the therein petitioner and respondent; and (b) heard plaintiff say to McQuade during that first conference when first presented with the *ex parte* order to show cause, "What are you doing? You're *my* lawyer."

39.     Upon information and belief, plaintiff's authority to act in his mother's estate was stayed on or about October 8, 2003 as a result of his own attorney's *ex parte* submission. Shortly thereafter, Virga's authority was stayed upon, *inter alia*, the presentation of official certified court documents evidencing the fact that Virga was a convicted felon; Virga's authority was then subsequently and permanently revoked.

40.     Upon information and belief, and at all times relevant, defendant Accetta failed his duty as an attorney and as an OCA employee when he chose not to report or take any action against McQuade's breaches of the most fundamental attorney-client obligations. Although McQuade was

9

ultimately disqualified from the estate many months later, it was only as a result of plaintiff's second submission to the court, protesting that impropriety.

41.    Upon information and belief, and at all times relevant, defendants DiBella and Scarpino, acting as attorneys and employees of OCA, and who handled and participated in the estate proceedings with defendant Accetta, failed their duty as an attorneys and as OCA employees when they chose not to report or take any action against McQuade's breaches of the most fundamental attorney-client obligations.

42.    At all times relevant, defendants DiBella, Scarpino and Accetta collectively failed to take corrective against McQuade and thereby caused plaintiff harm and damages continuing to the present, including the denial of plaintiff's right to due process, equal protection, and right to petition the government.

43.    Upon information and belief, in or about November of 2003, parties with interest in the estate were waiting in defendant Accetta's 8th floor office for a scheduled conference to begin. Seconds before defendants Accetta and DiBella of the OCA entered, DiBella was heard saying in a very raised voice, "I told you I didn't like this one."

44.    Upon information and belief, and at all times relevant, defendants Accetta, Scarpino and DiBella, grossly and knowingly failed their obligations as attorneys, and as employees of OCA, to take appropriate action or to report the misconduct of defendant McQuade. If not for the failings of Accetta, Scarpino and DiBella, plaintiff would have been provided with his right of due process, equal protection, right to petition the government.

45.    Upon information and belief, and though formally demanded in writing on numerous occasions, McQuade has never provided plaintiff with copies of all documents while he was representing plaintiff.

*Fraudulent Assignment of Interest Advanced by Defendants Accetta, DiBella & Scarpino*

46.     A timeline of the fraudulent assignment is attached as **Exhibit "C"**.

47.     Two days after Ronald's suicide, Frank W. Streng (hereinafter "Streng"), an attorney friend and political supporter of defendants Accetta, DiBella & Scarpino, and by utilizing the U.S. Mail, filed in court a purported assignment of interest (**Exhibit "D"**).

48.     At all times relevant, Accetta, DiBella, Korren, JMcQuade, DMcQuade & Scarpino knew that purported assignment was a fraud and designed and advanced in a court of law to defraud creditors.

49.     At all times relevant, Accetta, DiBella, Korren, JMcQuade, DMcQuade & Scarpino knew that the attorney-client relationship between attorney Streng and client Ronald ceased at the time of Ronald's death.

50.     Accetta, DiBella, Korren, JMcQuade, DMcQuade & Scarpino, at all times relevant, improperly remained silent and took no action against an attorney who filed papers in court without proper authorization. They knew attorney Streng did not have the authority to file the assignment of interest but they improperly remained silent and took no corrective action.

51.     At all times relevant, Accetta, DiBella, Korren, JMcQuade, DMcQuade & Scarpino knew that it was necessary for the establishment of a proper entity (a CT estate fiduciary) for Ronald, a resident of Connecticut, so that his Connecticut estate interests could continue in the New York State estate proceedings.

52.     In early 2008, defendant Korren admitted to plaintiff that, at all times relevant, he (Korren), in fact, knew that all estate proceedings should have been stayed pending the filing, on notice, of proper Substitution of Party instruments.  (**Plaintiff possesses an audio tape of that conversation with defendant Korren.**)

11

53.    In their desire to advance the fraudulent assignment, defendants Accetta, DiBella, Korren, JMcQuade, DMcQuade & Scarpino accepted and advanced a Notice of Appearance by defendant CAGiulini, accepting it not as a attorney for the representative of Ronald's estate, but as attorney for the purported assignee of the fraudulent assignment.

54.    At all times relevant, defendants Accetta, DiBella, Scarpino, Nicoali, JMcQuade, DMcQuade, CAGiulini, Barry, Casella, Miklitsch, CGiulini, McNamara, Bave-Planell and Korren knew that the assignment was a fraud on creditors and fraud on various courts of law.

55.    At all times relevant, defendants Accetta, DiBella, Scarpino, Nicoali, JMcQuade, DMcQuade, CAGiulini, CGiulini, Barry, Casella, Miklitsch, McNamara, Bave-Planell and Korren knew that the U.S. Mail and the internet was being used to advance their scheme.

56.    On one occasion, defendant McNamara provided plaintiff with an email from Streng and copied to defendant McQuade. Defendant McNamara took no reporting or corrective action as required by attorney code of ethics.

57.    At all times relevant, defendants Accetta, DiBella, Scarpino, JMcQuade, DMcQuade, CAGiulini, CGiulini and Korren, and because plaintiff would not go along with the fraudulent assignment, acted to harm, harass and deny plaintiff of his right of due process, equal access and right to petition the government, by advancing fraudulent papers in various courts of law.

58.    At all times relevant, defendants CAGiulini and CGiulini knew that all proceedings in the New York estate were stayed pending the appearance of a duly authorized representative of Ronald's Connecticut estate, but they chose not to follow the law requiring the creation of an authorized party, but simply chose to advance the fraudulent assignment that was improperly filed after the death of the assignor.

59.    At all times relevant, CAGiulini and CGiulini filed papers and appeared in court knowing that they were not properly authorized to do so.

60.    At all times relevant, defendants Accetta, DiBella, Scarpino, Korren, JMcQuade and MMcQuade permitted and advanced the improper actions of CAGiulini and CGiulini.

### *Acts of Retaliation, Intimidation and Harassment*

61.    In or about early 2004, and at the request of defendant CAGiulini, plaintiff agreed to meeting in a coffee shop on Grand Street in White Plains. At that meeting, defendant CAGiulini stated to plaintiff, "If you don't simply forget about the fu$#ing assignment, and just stop bringing it up, you'll be fu$#ing destroyed. You have no idea what the fu$# you're up against."

62.    In or about early 2004, it was revealed to plaintiff that the drafter of the fraudulent assignment, attorney Streng, had been advertising on his law firm website, and on the internet, the fact that he (Streng) had been on election transition committee of defendant Scarpino. (**Exhibit "E"**)

63.    At all times relevant, and at every given opportunity, defendants CAGiulini, CGiulini, Scarpino, JMcQuade, MMcQuade, Scarpino, Korren and Accetta retaliated against plaintiff for raising the issue of the appearance of impropriety and implied favoritism toward the drafter of the fraudulent assignment (Streng) by defendant Scarpino.

64.    Upon information and belief, defendants CAGiulini, CGiulini, Scarpino, JMcQuade MMcQuade, Korren, DiBella and Accetta knew it was grossly improper for the drafter of the fraudulent assignment, and who had also been publicly advertising his close association with the surrogate before whom all appeared, to seek and receive financial sanctions from defendant Scarpino against plaintiff.

65.    So emboldened are the defendants by their ability to advance a fraudulent instrument by stifling any legitimate inquiry, that the fraudulent assignment has, within the last six months, been used and filed again in another related estate court proceeding. The filing of the known fraudulent assignment by defendant Bave-Planell has also provided the basis for an additional court

13

filing by New York attorney Daniel G. Walsh and which knowingly and improperly references the

fraudulent filing by defendant Bave-Planell.

### Plaintiff Files a Complaint with the DDC

66.    On or about <u>May 17, 2006</u>, plaintiff filed an ethics complaint with the DDC against

McQuade complaining that: (a) McQuade improperly prepared, executed and filed false and

misleading documents against plaintiff while in an attorney-client relationship; (b) McQuade

grossly failed the requirement to possess basic knowledge of estate tax filing requirements; (c)

McQuade continued to reject the then-two-year old (now 4 year) demand of plaintiff that he provide

plaintiff with copies of files while plaintiff was his client; and (d) McQuade failed for over two

years to provide a required Affidavit of legal Services to the Court. **(Exhibit "F")**

### Plaintiff Discovers Corruption at the DDC

67.    In a letter dated on or about <u>May 15, 2007</u>, approximately one year later, and

bearing the stamped signature of defendant Cahill, the DDC advised plaintiff that his complaint

against McQuade had "been  resolved by the Surrogate" and that the DDC would be taking no

further action. Plaintiff was stunned by the May 15, 2007 dated DDC advisement because, and upon

information and belief: (a) the sole county Surrogate had finally recused himself from the estate

nearly two years earlier on August 3, 2005; (b) there were no pending estate proceedings, and there

had not been any for over one year; and (c) an acting surrogate's authority had been terminated over

fifteen months earlier on January 18, 2006, before plaintiff had even filed the McQuade complaint

with the DDC.

### Plaintiff Discovers Outside  Acts to Improperly Influence DDC Affairs

68.    In a letter dated on or about May 23, 2007, and upon information and belief,

defendant Barry of OCA independently, and at the direction of, or in concert with defendants

Accetta, DiBella, Nicoali, Scarpino and possibly other OCA employees, conveyed incomplete and misleading information to plaintiff, and sent a copy of that unsolicited letter to defendant Cahill at the DDC. Upon information and belief, the Barry letter was intended to improperly influence the DDC by conveying, displaying and expressing a heightened level of interest by defendants Nicolai, Scarpino, Barry, Accetta and DiBella, and others, in plaintiff's ethics complaint against defendant McQuade.

69.    Upon information and belief, defendant Nicolai improperly advanced his desire to cover and protect the drafter of the fraudulent assignment, attorney Streng, and who has publicly advertised the fact that he (Streng) was coordinating election campaign funds from Nicolai.

70.    Upon information and belief, and as reported in The New York Law Journal, defendant Nicolai has a history of complaints against him involving his improper influence and steering of court proceedings.

71.    Upon information and belief, defendant Nicolai, while acting in his administrative capacity, refused, when formally requested to do so by plaintiff in writing, to transfer all proceedings outside his jurisdiction for the sole reason that he could improperly influence and direct proceedings that involved his political friend and financial supporter, attorney Streng.

### The DDC's Sham Findings

72.    On or about June 27, 2007, plaintiff provided documentation from the Surrogate's Court Clerk to Cahill establishing that the sole county Surrogate, Judge Scarpino, had previously recused himself on August 3, 2005 and that any authority by any Acting-Surrogate had been terminated January 18, 2006. Specifically, and upon information and belief, from January 18, 2006 until at least the date of Cahill's letter of May 15, 2007, **there were no pending estate matters and there was no Surrogate assigned to the estate,** who could, even if permitted, resolve *any* attorney

15

ethics complaint plaintiff had filed with the DDC. To date, and upon information and belief, none of the issues raised in plaintiff's complaint against McQuade have been resolved.

### *No Sense of Ethics By Superiors at the Manhattan Ethics Committee*

73.   In or about January of 2008, and during a personal meeting with defendant Cohen in the DDC offices, Cohen: (a) advised plaintiff that she was in charge of plaintiff's complaint; (b) advised plaintiff that she was responsible for the May 15, 2007 letter, bearing the name of defendant Cahill, and that advised plaintiff that the McQuade ethics complaint had "been resolved by the Surrogate." and, (c) refused to explain how, or under what authority, resolution of the McQuade ethics complaint by an non-existent person outside the DDC could be accomplished.

74.   In or about December of 2007, and during a subsequent telephone conversation between Cahill and plaintiff, defendant Cahill: (a) could not provide plaintiff with the name of the mystery and unidentified "Surrogate" who had purportedly resolved all components of plaintiff's attorney ethics complaint against McQuade; (b) could not explain resolution by a non-existent Surrogate; (c) could not identify the person who presented such a false statement of fact to the DDC; and (d) could not provide plaintiff with any law, authority, opinion, directive or hint that conveyed the handling of ***ANY*** ethics complaint from the DDC to ***ANY*** judge or anyone else outside the DDC, except by appropriate referral or appointment by the Court itself.

75.   Upon information and belief, and at all times relevant, defendants OCA, Cahill, Cohen, DiBella, Accetta, Barry, Nicolai, Scarpino, JMcQuade, MMcQuade, Korren and John and Jane Does wantonly, recklessly, knowingly and purposefully, acting individually and in concert with each other, by means of misrepresentation, fraud, harassment, manipulation of laws, rules, regulations, and while acting in bad faith, sought to deprive plaintiff of his Constitutional right to fair and impartial proceedings, competent and effective counsel, and the seeking of relief by OCA administrative and ethics offices, *inter alia*, without improper or undue influence.

76.    Upon information and belief, and at all times relevant, the defendants conspired with each other and agreed with each other to act in concert to deny plaintiff of a fair review of his filed ethics complaint and to deny plaintiff his rights to due process and equal protection of the laws.

### Plaintiff Files Complaints with the Ninth Judicial District Grievance Committee

77.    Upon information and belief, plaintiff filed numerous complaints with the Second Department's Ninth Judicial District Grievance Committee that were summarily ignored.

78.    Upon information and belief, one complaint resulted in one attorney being privately admonished for threatening the plaintiff in writing, and the attorney was formally warned against such similar behavior in the future.

79.    Upon information and belief, one complaint resulted in attorney Streng's agreement to the committee that he would remove his improper advertising of his closeness with defendant Scarpino from his firm website and from the internet. After not complying, and upon revisiting the issue, attorney Streng finally removed his advertising of his closeness with defendant Scarpino.

80.    Upon information and belief, plaintiff's complaint regarding the fraudulent assignment was improperly transferred by defendant Casella from the 9JDGC to an *attorney bar association* in Rockland County for adjudication.

81.    Upon information and belief, defendant Casella knew that it was improper to refer an attorney ethics complaint, especially where there was strong evidence that a crime had been committed, from a grievance committee staffed by state employees to a volunteer bar association.

82.    Upon information and belief, defendant Casella knew that the proper action for dealing with conflicts within his office, which he conceded, was to transfer the complaint to another Grievance Committee, not a county bar association.

17

83.    Upon information and belief, defendant Miklitsch knew it was improper of her to purportedly adjudicate a complaint against an attorney "assigned" to her by a county bar association when, in fact, the complaint should have been transferred to another Grievance Committee.

84.    At all times relevant, defendants Miklitsch and Casella acted to thwart the complaint against Streng and by doing so denied plaintiff his right to due process, equal access and right to petition government.

### *Plaintiff Files Complaints with the Commission on Judicial Conduct*

85.    Plaintiff was encouraged when Appellate Division, Second Department Presiding Judge A. Gail Prudenti, directed that the allegations concerning the fraudulent assignment, internet advertising and financial sanctions be formally sent by Chief Clerk of the Court of the Appellate Division, Second Department, James Edward Pelzer to the Commission on Judicial Conduct.

86.    The Commission on Judicial Conduct sent plaintiff a form letter declining to take any action.

87.    Plaintiff has received numerous copies of the same denial letter sent to other complaints from the SCJC.

88.    Upon information and belief, and upon a thorough review of dozens of published actions by the SCJC against certain judges, the SCJC improperly advances certain agendas against some judges, while ignoring the outrageous conduct of others.

89.    Upon information and belief, the SCJC summarily ignores serious charges against select judges to advance certain agendas and to protect selected judges.

90.    Upon information and belief, the SCJC is a partial arbiter of secreted agendas that provides a grossly improper disservice to plaintiff, the general public, the legal community, the system of law and, in fact, the vast majority of honorable justices of the state's courts.

### *Plaintiff Discovers that the Commission on Judicial Conduct is a Sham*

91.    On or about Wednesday, March 5, 2008, at 10 o'clock in the morning, plaintiff met at the DDC offices with the newly appointed DDC Chief Counsel, Alan W. Friedberg who, just a few months earlier, had been the longtime Deputy Chief Counsel at the SCJC. Plaintiff had requested a meeting, and Mr. Friedberg scheduled the referenced date and time.

92.    **Plaintiff possesses an audio tape of the March 5, 2008 meeting with DDC Chief Counsel, and who was the prior Deputy Chief Counsel of the SCJC, Alan W. Friedberg.**

93.    During the meeting, Mr. Friedberg stated to plaintiff that he was a very "hands-on" type of person, and that he had, in fact been very "hands-on" at the SCJC.

94.    Mr. Friedberg took great pride in stating his personal involvement in all matters and did, in fact, voice his pride in being "the person" who put Judge Garson behind bars.

95.    Plaintiff did not discuss the common belief that it was Kings County District Attorney Charles J. Hynes who had prosecuted the matter of ex-judge Gerald P. Garson.

96.    At no time during the March 5, 2008 meeting did Mr. Friedberg use the words "fair and impartial," "due process" or "integrity."

97.    DDC Chief Counsel Friedberg again refused to explain to plaintiff how, why or under what authority the McQuade complaint could ever be handled by a non-existent DDC outsider, choosing instead to confront plaintiff, the complainant, personally in order to chill any pursuit of my plaintiff's right of due process concerning an attorney's misconduct.

98.    Upon information and belief, Counsel Friedberg did concede that plaintiff was entitled to be properly represented by counsel even if, for the sake of argument, plaintiff was a mass murderer, a bank robber, the one who stole the Red Cross 9/11 monies, beat old ladies, harmed defenseless animals or was a litter bug.

99.    Though he advised he was a very "hands-on" person, Mr. Friedberg told plaintiff

he had never heard about the numerous submissions to the SCJC alleging that numerous judges had been involved in furthering a fraud by an attorney friend where: over $100,000.00 in Red Cross 9/11 donation money had been stolen by the justices' friend's client; an insurance company had been defrauded by the scheme the justices advanced; their friend's client had committed suicide; and, the involved surrogate had confronted the *pro se* complainant-litigant in the courthouse lobby to voice his anger at being asked to recuse himself.

### *Inherent Unfairness to Judges, Attorneys and Complainants at the DDC & SCJC*

100.    Plaintiff's fully documented March 5, 2008 meeting with Mr. Alan W. Friedberg provides a troubling insight by the current DDC Chief Counsel, and the former SCJC Deputy Chief Counsel, into the lack of due process at both "ethics" entities. Personal agendas and selective enforcement have completely replaced the charge of ethics oversight at the DDC and the SCJC. If, for the sake of argument, Mr. Friedberg was truthful in stating he had never heard of the various issues raised by plaintiff over the past few years, then the issue becomes who is really in charge at the DDC and SCJC.

101.    Upon information and belief, lower level employees at the DDC and the SCJC, and who are improperly beholden to political and legal outsiders, advance or thwart selective ethics inquiries without regard to merit.

102.    As a result of the March 5, 2008 meeting at the DDC, plaintiff corresponded with Mr. Friedberg of the DDC and with the Chief Counsel of the SCJC (**Exhibit "G"**). Plaintiff cannot confirm if the SCJC Chief Counsel has personally received the documents as the typical terminating form letter was the only response.

**COUNT ONE**
**(All Defendants)**
**42 U.S.C. §1983**
**DEPRIVATION OF RIGHTS and**
**CONSPIRACY TO DEPRIVE RIGHTS UNDER**
**THE FIRST and FOURTEENTH AMENDMENTS**

103.   Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 102 as though fully set forth herein.

104.   As set forth above, the DDC is a division of the New York State Supreme Court, Appellate Division, First Judicial Department, and is therefore part of the New York State court system. As part of the New York State court system, the DDC is obligated to administer justice in a fair and honest manner.

105.   The DDC is also an arm of the State of New York and a "state actor" within the meaning of § 1983. Defendants Cahill, Cohen, DiBella, Accetta and Barry are also "state actors" under § 1983.

106.   Plaintiff has a Constitutional right to a fair and honest judicial system, free from corruption and bias, with impartial arbiters of the law. Through the conduct set forth above, including but not limited to their conduct in denying plaintiff access to fair and honest court proceedings, all defendants, collectively and each one of them individually, have engaged in actions and abuses which violate and deny plaintiff of his Constitutional rights, including his rights to due process and equal protection of the law, as provided under the Fourteenth Amendment of the United States Constitution.

107.   Through the conduct set forth above, including but not limited to their conduct in denying plaintiff access to fair and honest court proceedings, and by colluding in bad faith in various improper *ex parte* communications, all defendants, collectively and each one of them individually, have engaged in actions and abuses which violate and deny plaintiff of his Constitutional rights, including his right to petition the government under the First Amendment to the United States Constitution.

108.    As a direct and proximate result of said acts, plaintiff has suffered and continues to suffer extreme loss of security in the Legal System and Judicial Process, emotional pain and suffering, loss of enjoyment of life, and lost of trust of lawyers, who are charged to uphold ethical standards within the legal system, and in the Court system.

109.    As a result of the defendants denying plaintiff's rights, plaintiff is now and will continue to suffer irreparable injury and monetary damages, as well as damages for mental anguish, and humiliation.  Plaintiff is entitled to damages in the amount of thirty million dollars ($30,000,000.00) dollars as well as punitive damages, costs, and possible attorneys' fees for these violations.

## COUNT TWO
### (All Defendants)
## DENIAL OF SUBSTANTIVE DUE PROCESS
## AND DEPRIVATION OF RIGHTS

110.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 109 as though fully set forth herein.

111.    The defendants have knowingly acted to deny plaintiff of his constitutionally guaranteed rights of due process of law, equal protection, and the right to petition his government.

## COUNT THREE
### (All Defendants)
## ONGOING DENIAL OF EQUAL PROTECTION OF THE LAW

112.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 111 as though fully set forth herein.

113.    The defendants have knowing acted to deny plaintiff his constitutionally guaranteed right of equal protection of the law.

## COUNT FOUR
### (All Defendants)
## DENIAL OF RIGHT TO PETITON GOVERNMENT
## AND OTHER FIRST AMENDMENT RIGHTS

114.    Plaintiff repeats and realleges each and every allegation contained in paragraphs

1 through 113 as though fully set forth herein.

115.    The defendants have knowingly and improperly acted to deny and interfere with

plaintiff's constitutionally guaranteed right to petition government.

## COUNT FIVE
### (All Defendants)
## RIGHT TO DAMAGES FOR DEPRIVING PLAINTIFF OF
## HIS CONSTITUTIONAL RIGHTS UNDER THE COLOR OF STATE LAW

116.    Plaintiff repeats and realleges each and every allegation contained in paragraphs

1 through 115 as though fully set forth herein.

117.    The defendants have purposely acted under color of state law to deny plaintiff of his

constitutionally guaranteed rights.

## COUNT SIX
### (Defendants Joseph & Michael McQuade and McQuade & McQuade)
### BREACH OF CONTRACT

118.    Plaintiff repeats and reiterates the allegations set forth in paragraphs 1 through 117

as though fully set forth herein.

119.    Upon information and belief, plaintiff entered into a legal and binding contract with

defendant law firm McQuade & McQuade for legal representation concerning his legal interests and

involvement in his mother's estate.  Defendant Michael McQuade participated in proceedings while

knowing of the improper acts. Plaintiff met with defendant Joseph McQuade, a partner in that law

firm, for the purpose of pursuing his interests in his mother's estate.  Rather than properly

representing plaintiff, or severing the relationship if he perceived a conflict, defendant McQuade knowingly, and with intentional deceit, in collusion with others involving improper *ex parte* communications, surreptitiously filed *ex parte* papers against his own client, the plaintiff. As a partner of the firm McQuade & McQuade, liability for Joseph McQuade's conduct is imputed to the firm.

120.    By the actions set forth above, defendants Michael & Joseph McQuade and McQuade & McQuade breached their contract to provide legal representation to Plaintiff, and are therefore liable to plaintiff for damages in an amount to be determined at trial.

## COUNT SEVEN
### (Defendants Joseph & Michael McQuade and McQuade & McQuade)
### BREACH OF FIDUCIARY DUTY

121.    Plaintiff repeats and reiterates the allegations set forth in paragraphs 1 through 120 as though fully set forth herein.

122.    As a client of defendant law firm McQuade & McQuade, the law firm and its partners owed plaintiff fiduciary duties of good faith, loyalty, and care.

123.    When defendant McQuade drafted, executed and filed ex parte papers against his own client, the plaintiff, both McQuade and the McQuade & McQuade law firm breached their fiduciary duties to plaintiff. As a partners of the firm McQuade & McQuade, liability for Michael and Joseph McQuade's conduct is imputed to the firm. As a result, defendants Michael and Joseph McQuade and McQuade & McQuade, are liable to plaintiff for damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully request that the Court enter judgment and an

Order in favor of plaintiff as follows:

a.  First Cause of Action: in excess of thirty million ($30,000,000.00) dollars as well as punitive damages, costs and attorney's fees.

b.  Second Cause of Action: in excess of thirty million ($30,000,000.00) dollars as well as punitive damages, costs and attorney's fees.

c.  Third Cause of Action: in excess of thirty million ($30,000,000.00) dollars as well as punitive damages, costs and attorney's fees.

d.  Fourth Cause of Action: in excess of thirty million ($30,000,000.00) dollars as well as punitive damages, costs and attorney's fees.

e.  Fifth Cause of Action: in excess of thirty million ($30,000,000.00) dollars as well as punitive damages, costs and attorney's fees.

f.  Sixth Cause of Action: in excess of thirty million ($30,000,000.00) dollars as well as punitive damages, costs and attorney's fees.

g.  Seventh Cause of Action: in excess of thirty million ($30,000,000.00) dollars as well as punitive damages, costs and attorney's fees.

h.  Awarding plaintiff punitive damages against all individual defendants;

i.  Appointing a federal monitor to oversee the day-to-day operations of the DDC and SCJC for an indefinite period of time; and

j.  An Order granting such other legal and equitable relief as the court deems just and proper.
    Plaintiff demands a trial by jury on al claims so triable.

## DECLARATION UNDER PENALTY OF PERJURY

The undersigned declares under penalty of perjury that he is the plaintiff in the above action, that he has read the above 1st amended complaint and that the information contained in the complaint is true and correct. 28 U.S.C. § 1746; 18 U.S.C § 1621.

Dated: New York, New York
    May 12, 2008

Respectfully submitted,

By: _____
    Kevin McKeown, *Pro Se*
    P.O. Box 616
    New York, New York 10156
    (212) 591-1022 tel